## DOBBYN v. ROGERS

[No. 28,307. Filed January 8, 1948.]

*Seal & Seal,* of Washington, and *Carl M. Gray,* of Petersburg, for appellant.

*McDonald & McDonald,* of Princeton, *Arterburn & Hart,* of Vincennes, and *Robert J. Hyatt,* of Washington, for appellee.

STARR, J.—The appellee, Arthur Rogers, and the appellant, Fred Dobbyn, were candidates for the office of Judge of the 49th Judicial Circuit composed of Daviess and Martin Counties at the general election held on November 5, 1946. They were the only candidates for said office. Appellee was the Republican candidate and appellant was the Democratic candidate. The appellant was duly certified to have been elected by a majority of the votes cast.

This action was commenced by the appellee by filing a petition to contest on account of mistake of the official count of votes. This petition also requested a recount of votes and the same was granted, the result of which showed appellee had received a majority of the votes cast. Thereupon a hearing of the contest was had. The trial court found that the appellee had received 8,102 legal votes and that the appellant had received 8,094 legal votes. Upon this finding appellee was adjudged elected to said office. It is from this judgment this appeal is prosecuted.

Since the submission of this cause to this Court the appellee has died as is suggested by the appellee's counsel. The following judgment will therefore be entered as of the date of the submission, to-wit: April 30, 1947.

The appellant has assigned as error the overruling of his motion for a new trial wherein he questions the admission in evidence of certain ballots voted for the appellant. The appellee, by way of cross-error, has questioned the admission in evidence of certain ballots voted for the appellant and the rejection of others voted for the appellee.

We will first consider the rulings not waived on the admission and exclusion of ballots challenged by appellant's motion for a new trial.

Appellee's Exhibits 1, 49, and 54 which were counted have the voting marks in the Republican circle. Each of these voting marks discloses a line in the form of a spur at the end of one or more of the arms of the cross. In each of these crosses this line is very faint. It would appear that this line was made in each instance by the failure of the voter to lift the pencil from the paper between the completion of one stroke and the beginning of the other stroke of the cross. We attribute these irregularities either to unskillfulness, physical infirmity, or conditions not conducive to accuracy. Nothing appears on the face of the ballot which would indicate an intentional, dishonest purpose. *Conley* v. *Hile* (1934), 207 Ind. 488, 193 N. E. 95; *Craney* v. *Traylor* (1938), 214 Ind. 542, 16 N. E. (2d) 845. These ballots were properly counted.

Appellee's Exhibits 10 and 45 which were counted have the voting marks in the Republican circle. The mark on each ballot is like the figure "4" placed in a slanting position. None of these marks are faint. We consider the mark which connects the two arms of the cross on each ballot a distinguishing mark. Neither ballot should have been counted. *Craney* v. *Traylor, supra,* p. 550.

On appellee's Exhibit 2 in the Arthur Rogers square the mark is small and resembles an inverted "V" and the lines do not cross. This marking invalidates this ballot. *Nicely* v. *Wildey* (1936), 210 Ind. 640, 5 N. E. (2d) 111; *Craney* v. *Traylor, supra.* Section 29-5218, Burns' 1933 (Supp.), among other things provides:

"The whole ballot is void if the voter . . . (d) makes any mark thereon other than a cross X mark in a voting square or circle . . .; except that . . . a mark other than a cross X mark made in a voting square shall not make the ballot void, but shall render it blank as to the office . . . in connection with which it is made. A cross x mark is any straight line crossing any other straight line at any angle . . ."

This ballot should not have been counted.

On appellee's Exhibit 108 in the Arthur Rogers square are two lines which roughly form a letter "T" inverted to the left. These lines do not cross. For the reasons given for the rejection of appellee's Exhibit 2 this ballot should not have been counted.

Appellee's Exhibit 115 has but one voting mark and that is in the Republican circle. The character resembles the letter "T" with a curved top. It is inverted to the left and the lines do not cross. This ballot should not have been counted for the reasons heretofore set out for the rejection of appellee's Exhibit 2.

Appellee's Exhibits 4, 8, 13, 15, 77, and 94 have the voting mark in the circle. Exhibit 100 has a voting mark in the Arthur Rogers square. Aside from said Exhibit 94 each of these voting marks has a bar, check, hook, prong, or an extra line appended to the arms of the cross.

Said Exhibit 94 contains some very fine, irregular blue pencil marks on the lower left-hand portion of the same. It is apparent these marks are accidental. They are too fine and wavy to have been intentionally placed on this ballot.

All of these ballots were correctly counted for the reasons we have heretofore given for the counting of appellee's Exhibit 1.

On appellee's Exhibits 6, 14, 26, 32, and 85, which are mixed ballots, there appears on each an erasure in a square other than that of the appellee. As to Exhibit 6, and 85, at the place of erasure in each, there is a slight hole through the paper evidently caused by such erasure. Said Exhibit 32 also contains a smudge or soiled spot 1½ inches long and one-half inch wide which might have been caused by a finger mark or a greased or soiled hand and could have been made unintentionally.

■■ As to erasures or marks our statute provides:

". . . except that an erasure or mark other than a cross X mark made in a voting square shall not make the ballot void, but shall render it blank as to the office, party position or question in connection with which it is made." § 29-5218, Burns' 1933, (Supp.), Rule 1.

As to the smudge or grease spot on Exhibit 32 a similar ballot was held valid in *Nicely* v. *Wildey, supra.* As to the slight hole in Exhibit 6 and 85 there was no intentional multilation as the same was evidently caused. by the erasure. See *Conley* v. *Hile, supra.* Appellant also insists that the lines do not cross in the square of the appellee. With this we cannot agree. All of these ballots were correctly counted.

Appellant objects to the counting of appellee's Exhibits 37, 39, 59, 62, and 76 which are all cases where there is a tear in the ballot but no part of the ballot is missing and the voting thereon is unmarred and clear in every detail. There is no evidence that the tearing of any of these ballots was done by the voter. It is only where the *voter* defaces or tears the ballot that the same is invalid. § 29-5218, Rule 1, *supra.* We also note that these torn ballots are similar to the ballot identified as appellant's Exhibit 38

which was admitted and counted for the appellant and which admission was waived in the appellee's cross-error brief. Due to this fact the appellant is not in position to raise objection. *Glick* v. *Hunter* (1920), 190 Ind. 51, 129 N. E. 232. All of these torn ballots were correctly counted.

We have examined appellee's Exhibits 31, 37, 52, 53, 58, 60, and 73. These ballots were correctly counted. On each of these ballots one of the voting marks, which appears in the circle, is paralleled with one or more dull straight line. It is our opinion that these extra marks could have been made with a split or broken pencil and that an honest effort to comply with the law was made by the voter in each instance. We also note that there are numerous ballots offered by the appellant and admitted by the trial court similar to these exhibits, to-wit: appellant's Exhibits 2, 5, 50, 57, 113, and 135; and to the counting of same the appellant has waived error. On appellee's Exhibit 11 which is a mixed ballot only one line instead of a cross appears in the square of a candidate other than appellee. Also there is a dull, fine line in the cross parallel to one of the lines of the cross in a square other than the one before the name of the appellee. These marks do not invalidate this ballot as to appellee. § 29-5218, Burns' 1933, (Supp.), Rule 1 (d). All of these exhibits were properly counted.

On the back of appellee's Exhibit 25 in the upper part thereof is written in ink "Vote Not Counted." Clearly this writing was done by the Election Board as part of their computation and did not invalidate this ballot. *Conley* v. *Hile, supra.* Also on this exhibit, which was a mixed ballot, in the cross in the square before appellee's name appears a faint mark parallel to one of the lines of the same.

In our opinion this mark does not invalidate this ballot for the reason set out in discussing appellee's Exhibit 31. This ballot was correctly counted.

The voting mark appears in the circle of appellee's Exhibit 17. The mark is made up of two lines crossed by two other lines. In our opinion this is a distinguishing mark and would invalidate this ballot had not a similar ballot identified as appellant's Exhibit 50 been admitted for the appellant, which admission was waived in appellee's cross-error brief. Due to this fact the appellant is not in a position to object to said Exhibit 17, *Glick* v. *Hunter, supra,* and the same was correctly counted.

Appellee's Exhibits 18 and 19 were properly counted. The voting mark in each of these ballots is in the circle. Exhibit 18 has the same imperfections as appellant's Exhibit 50 which, as we have herein stated, was admitted for the appellant. and whose admission was waived in appellee's cross-error brief. There is a slight spur at the end of one of the arms of the cross in appellee's Exhibit 19. It is apparent that this mark consisting of the spur was made accidentally and is admitted for the same reason as heretofore set out for the admission of appellee's Exhibit 1.

Appellee's Exhibit 30 is a mixed ballot. In the Arthur Rogers square is a design with two lines crossing. One of the arms of the cross divides into three separate prongs. In our opinion this constitutes a distinguishing mark. However, we have examined appellant's Exhibit 13 which was offered by the appellant and received in evidence over the objection of the appellee. Said Exhibit 13 is subject to the same infirmity as appellee's Exhibit 30. "A party who has made out his own case by introducing a kind

of evidence objected to by his adversary is in no position to insist that, while such evidence remains in the record in his favor, other evidence of the same class favorable to his adversary shall be excluded." *Glick* v. *Hunter, supra.*

The admission of appellee's Exhibit 12 and the counting of the same cannot be disturbed. Appellant's Exhibit 8 is similar to this exhibit. Exhibit 8 was counted by the trial court although objected to by the appellee.. *Glick* v. *Hunter, supra.*

Appellee's Exhibits 23, 35, 41, 71, and 79 are each mixed ballots. Complaint is made as to irregular crosses made in each instance in the squares other than the Arthur Rogers square. The cross in the square before appellee's name is regular. As we have hereinbefore stated, under our statute, a mark other than a cross in a voting square only renders it blank as to the office in connection with which it is made.

Appellant contends that the marks in the square before Arthur Rogers' name in appellee's Exhibits 65, 81, and 83 do not cross. From our inspection, it is our opinion that these lines do cross in each of these ballots and said ballots were correctly counted.

Appellee's Exhibit 27 is an absent voter's ballot and a mixed ticket. In the mark in the square before the name of Arthur Rogers one of the arms of the cross is "V" shaped closing at the lower end of this arm. There are also knobs and prongs on the ends of the cross marks. We are admitting this exhibit for the same reason that we have heretofore set out for the admission of appellee's Exhibits 1 and 17.

Appellee's Exhibit 28 was properly counted. This is a mixed ballot. The marking in the Arthur Rogers square is clearly a cross and there is nothing to indicate

that there was an intent to make a distinguishing mark thereon.

Appellee's Exhibit 40, which is a mixed ballot, contains a cross in a voting square other than the Arthur Rogers square. It appears that the voter attempted to obliterate this cross by drawing his pencil through the same numerous times. As a result of this attempt there appears a large blue spot covering the entire cross. This spot or smudge is more than an erasure or a mark and therefore amounts to a distinguishing mark. This ballot should not have been counted.

Appellee's Exhibit 48 is a mixed ballot and contains extra blue marks in a voting square other than that of Arthur Rogers. The voting mark in the Arthur Rogers square is regular in every way. This vote was properly counted due to the provision of our statute which we have cited in discussing appellee's Exhibit 2.

Appellee's Exhibits 46, 64, 78, and 84 are each marked by a cross in the circle. In each instance near one of the lines of the cross there appears a small dot or mark in the circle. From our examination of these dots and small marks it is our opinion they were caused by accident and should not be considered as distinguishing marks. *Conley* v. *Hile, supra.* These marks are similar to those contained in appellant's Exhibits 7 and 46 which were counted in appellant's favor and waived by the appellee in the cross-error brief. These ballots were correctly counted.

Appellee's Exhibit 70 is voted in the circle. There is a mark parallel to the lower right arm of the cross. This stroke is slightly longer than the right arm of said cross and is made in a firm hand. This is a distinguishing mark. It cannot be attributed

to accident or lack of ability on the part of the voter. This vote should not have counted.

Appellee's Exhibit 33 was properly admitted. This was a mixed ballot. Under our statute heretofore cited marks complained of in squares other than that of Arthur Rogers' cannot invalidate this ballot insofar as he is concerned. The cross made in his square is made with wavy lines and the ends of the same are blunted. It would appear that these marks were made by an infirm person or over a rough board and it is quite apparent that this is not an intentional distinguishing mark. *Lumm* v. *Simpson* (1935), 207 Ind. 680, 194 N. E. 341.

The face of each of appellee's Exhibits 38 and 69 is soiled in that there are ink fingerprints and smears thereon. Also there is a slight hole in Exhibit 38 in the circle of the Prohibition ticket. It cannot be presumed that the soiling of said ballots was done by the voter as he is not permitted to take pen and ink with him into the voting booth. It must be presumed that these markings were accidently made by the Election Board in counting and tabulating the ballots wherein ink is used. Again "A slight soiling of the ballot which reasonably appears to be the result of accident or want of due care by the voter in that regard is not sufficient to condemn it if otherwise fair." *Spaulding* v. *Romack* (1916), 185 Ind. 105, 113 N. E. 229. Nor do we think that the slight hole in the Prohibition emblem invalidates Exhibit 38. *Conley* v. *Hile, supra.* We also note that the soiling of these ballots is similar to appellant's Exhibit 69 which was counted for appellant and waived in the appellee's cross-error brief. These ballots were properly counted.

The voting marks on appellee's Exhibits 42 and 55 are each in the circle. The mark on Exhibit 42 is a

large cross mark extending across the circle. From the intersection of the cross downward to the right are two separate parallel lines cut by the other line of the cross. On Exhibit 55 three faint lines compose one stroke and two faint lines compose the other. It is our opinion these extra marks were made in retracing lines or in an effort to retrace. They are unskillfully made and may be attributed to unfamiliarity with the pencil or perhaps bad eyesight, infirmity or a defective or split pencil. These ballots were properly counted. *Conley* v. *Hile, supra; Roberts* v. *Drake* (1933), 205 Ind. 425, 185 N. E. 285. These ballots are similar to appellant's Exhibits 2 and 5 which were admitted and counted for appellant by the trial court and waived in the cross-error brief.

Appellee's Exhibit 51 was properly counted. This ballot was voted in the circle and the only defect complained of is a slight hole at the end of one of the cross arms which is visible when the ballot is held up to the light. There also appears to be a faint accidental mark above the arm of the cross where the hole appears. There is no indication that there was an intentional mutilation of this ballot and the same should be counted. *Conley* v. *Hile, supra.*

On the back of appellee's Exhibit 57 in the upper part thereof and to the right and the center there is written from the top downward in ink, "168 Straight Republican." Also, in the lower right corner of the back of this ballot is written "96." No initials or names appear in connection with these figures though the regular poll clerks' initials are in the proper place. The trial court found that these writings and marks were not made by the voter. It is apparent that they were made by the Election Board. This ballot was properly counted. *Conley* v. *Hile, supra.*

Appellee's Exhibit 67 contains an ink blot about three-eighths of an inch in diameter which evidently went through the paper. Above this blot and slightly to the right is a smaller ink blot. What was said in discussing ink smears in appellee's Exhibit 38 applies to this ballot. Furthermore, appellant's Exhibit 67 which was counted for him is subject to the same objection. This ballot was properly counted.

Appellee's Exhibit 68 is voted in the circle. The markings consist of four lines drawn downward to the left and these are cut by three other lines drawn downward to the right. The four lines are visible at the base of the cross but they so overlap and coincide that it is difficult to say how many are observable at any particular point. At the top of the cross they have diverged into three separate lines. The said three lines mingle at the center of the cross into two lines; at the bottom fan out into three lines and at the top all seem to converge into one line. This ballot should not have been counted. These multiple lines could not have been caused by retracing nor could they have been caused by lack of skill, bad eyesight, or other similar cause.

Appellee's Exhibit 72 is a mixed ballot. The mark in the square before appellee's name is similar to the mark described in appellee's Exhibit 10. This ballot was properly counted for the same reason that said Exhibit 10 was counted. Any irregular markings in the other squares would not invalidate this ballot insofar as Rogers is concerned. § 29-5218, Rule 1 (d), *supra.* The applicable portion of this statute was quoted above in our discussion of appellee's Exhibit 2.

On the face of appellee's Exhibit 74 is a mark in the form of an inverted capital "C" made with a blue

pencil. It is our opinion that this is an accidental touching of the pencil to the paper and was properly counted. Such a mark was held not to be a distinguishing mark in *Conley* v. *Hile, supra.* Furthermore, this ballot is similar to appellee's Exhibit 8 which was counted for appellant.

Appellee's Exhibit 75 was properly admitted. The mark in the circle is merely an irregular cross. " . . . no ballot shall be declared void or partially blank because a cross X mark thereon is irregular in form." § 29-5218, Rule 1 (d), *supra.*

Appellee's Exhibit 80 was properly counted. On the back of this ballot is a mark made with a blue pencil resembling a large pin with the head pointing upward. From the head extending to the left is a horizontal line about one inch long. These marks are rather dim. It is apparent that they were made accidentally. *Sailer* v. *Harvey* (1936), 209 Ind. 430, 199 N. E. 250.

Appellee's Exhibit 96 is a mixed ballot. All of the crosses are regular except the one in the square of Willis Weaver who was a candidate for an office other than that for which appellee was a candidate. There is a cross in the Weaver square. Through the point of intersection of the lines of this cross there is a horizontal line extending across the square. At most this mark could make the ballot void and render it "blank as to the office, party position or question in connection with which it is made . . ." § 29-5218, Rule 1 (d), *supra.* This ballot was properly counted.

The ballot identified as appellant's Exhibit 1 which the Court refused to count has the voting mark in the Democratic circle. The ballot is regular except there is a cross in the square of Leonard O. Shaw in the Republican column. It is true that this cross is blurred

but this blur is clearly the result of accident and inadvertence. Said § 29-5218, *supra,* is silent as to the effect of a ballot so marked.

Rule 6 of said section provides that where the cross mark is in a circle above the party column and there is also a mark in a voting square or in each of two or more voting squares in the same column without having made a voting mark in any other column and without writing in any name, such individual voting mark shall be treated as surplusage and the mark in the circle shall be counted as a vote for each candidate named in such column. This rule further provides that where the voter shall have made a cross in the circle above a party column and in a voting square, or in each of two or more voting squares in the same party column and also in another column or columns, or also writes a name or names in a blank column, the votes so marked shall be counted only for the persons so indicated. Under the Acts of 1897, ch. 41, § 3, p. 49; § 29-1125, Burns' 1933, the ballot under consideration would have been invalid. We also note since the election in question Rule 6 has been amended by Acts of 1947, ch. 156, § 1, p. 481, Rule 5. Had this ballot been voted after this amendment the same would have been invalid.

There being no statute covering this particular ballot at the time it was cast the burden is on the Court to determine its validity by the application of general principles of law. It is true that in some of our past opinions this Court has applied rather rigid and arbitrary standards to determine the validity or invalidity of a ballot. In the absence of fraud, actual or suggested, election statutes should be liberally construed. We should at all times have before us the fundamental principle that no voter should be deprived of his franchise for the infringement of any technical

requirements in casting his ballot. *Lumm* v. *Simpson, supra.* "It is purity of election and a free and honest expression of the voter's will that is aimed at, and a substantial compliance with the law in the execution of the ballot will suffice if the general appearance of the ballot is such as clearly to indicate an honest effort by the voter to comply with the law, and his choice of candidates may be clearly ascertained." *Borders* v. *Williams* (1900), 155 Ind. 36, 43, 57 N. E. 527.

In the involved ballot the voter's intent is clear and unambiguous and shows a good faith effort on his part to exercise his right of franchise. This ballot should have been counted and was improperly excluded.

In appellant's Exhibit 11 the voting mark is in the circle. At the end of the upper left arm of the cross is a slight oblique blue line in the form of a prong; also at the bottom of the Democratic column is a small blue line across the name of William H. Potts. It is apparent to us that these irregularities occurred by accident. This ballot should have been counted and it was error to exclude the same.

Appellant's Exhibit 23 was properly excluded. The mark in this ballot was in the Democratic circle. Instead of a cross there are two parallel lines below a diagonal line. These two parallel lines run into the diagonal line. Neither of these two lines join the line running in the same direction above the diagonal line. These two parallel lines are too far apart to have been caused by a broken or split pencil or to have been made otherwise than intentionally.

Appellant's Exhibit 24 is a mixed ballot votes being marked in squares of both the Republican and Democratic columns; however, there is a heavy straight mark in the Democratic circle which is not crossed by any

other line. This line is approximately one-fourth inch long. It is our opinion that this mark is a distinguishing mark and the ballot was properly rejected.

The Court did not err in refusing to admit in evidence the ballots identified as appellant's Exhibits 26, 29, 37, 66, 70, 72, 78, 79, 81, 92, 99, 110, 118, 129, and 136. In each of these exhibits the voting mark is in the circle. Each of these exhibits is subject to the same defect as besets appellee's Exhibits 68 and 70. For the same reason, therefore, that we excluded appellee's Exhibits 68 and 70 we hold that these exhibits were properly excluded and not counted.

There was no error in refusing to admit in evidence the original ballots identified as appellant's Exhibits 30 and 122. Exhibit 30 has an erasure in the Republican circle. Exhibit 122 has a similar erasure in the Prohibition circle. Said § 29-5218, *supra,* specifically provides that an erasure, except an erasure in a voting square renders the entire ballot void .

Appellant's Exhibit 35 was not counted for the reason that there is a spot on the face of this ballot which is not in a square or circle. This ballot was excluded on the grounds that this spot was an erasure. If the statute in force at the time of this election had not invalidated ballots for any erasure appearing outside of a square we would be inclined to count this ballot as this spot is quite small and does not puncture the paper; however, there is a faint trace of a blue line through this spot which appears to have been rubbed as the paper is thinner at this spot and the entire spot has a bluish tinge. We hold this ballot was properly rejected.

Appellant's Exhibit 10 is a mixed ticket. There are two crosses in the square before the name of John S.

Davis. For this irregularity as well as a certain ▇ erasure, which we do not consider material as it is in a square other than the square before the name of appellee, this ballot was rejected. Whether or not this was correct makes no difference as we find that the Court excluded appellee's Exhibit 98 which had a similar defect. Exhibit 98 was objected to by the appellant for this defect. "If a party objects to a certain class of evidence from his opponent and has it excluded, he will be estopped from complaining of exclusion of similar evidence offered by himself." Watson's Works Practice & Forms, Vol. II, § 1451 (1921 ed.).

Appellant's Exhibit 36 has the voting mark in the circle. This mark is smudged which smudge was evidently made by a thumb print over the same. ▇ Clearly it is not an erasure. This ballot is valid and should have been counted. It was error not to do so. *Conley* v. *Hile, supra,* p. 508.

On appellant's Exhibits 43 and 80 the voting marks are each in the circle. Each of these marks consists of a cross in the form of an "X". Across the ▇ top and bottom of the cross are horizontal lines which resemble an upper case "X". These ballots were properly excluded as these marks constitute more than the "X" contemplated by the statute. *Conley* v. *Hile, supra,* p. 511.

Appellant's Exhibits 44, 45, 60, 64, 68; and 91 are each ballots where the voting mark appears in the circle. There is an irregularity in each of these marks consisting of a spur, prong, or short line. We agree with the statement in the appellant's brief that each of these irregularities can be accounted for "on the ground of a split pencil, accident, mistake, indecision, or an attempt to retrace, and they do not invalidate any of these ballots." These ballots should be counted.

Appellant's Exhibit 56 is an absent voter's ballot and is marked in the circle. This ballot does not contain the seal of the clerk of the court as provided by § 29-4907, Burns' 1933, (Supp.). On the back of the ballot there does appear about one-fourth inch of what appears to be an edge of a seal. There is no way to identify the same as the clerk's seal. The clerk's seal is mandatory on an absent voter's ballot. *Werber* v. *Hughes* (1925), 196 Ind. 542, 148 N. E. 149. For this reason it was proper not to count this ballot.

In appellant's Exhibit 59 the voting mark is in the circle. This mark is somewhat blurred in the lower arms of the cross. It is our opinion that this irregularity can be explained on the ground of a rough writing surface in the voting booth, accident, or a broken pencil. A distinct cross is discernible. It is our opinion that an honest intention on the part of the voter is ascertainable from the ballot. The same is valid and should have been counted. *Spaulding* v. *Romack, supra,* p. 112; *Conley* v. *Hile, supra,* p. 499.

Appellant's Exhibit 65 is an absent voter's ballot and a mixed ballot. The voter made the crosses with a black lead pencil and then retraced them with a red lead pencil. It is true that an absent voter's ballot may be voted with a pencil with any colored lead. § 29-4910, Burns' 1933, (Supp.). But in our opinion this ballot was properly excluded as this statute does not give the right to make the cross with two pencils. *Conley* v. *Hile, supra,* p. 509.

Appellant's Exhibit 74 is a mixed ballot. The cross in the square before the name of the appellant is

regular. There are, however, five squares in the Republican column which contain check marks.

Other candidates in that column and in the Democratic column have properly made voting marks in their respective squares. These check marks only disqualify the ballot as to those for whom the same were made and it is valid for whom proper crosses were made. § 29-5218, Rule 1, (d), *supra*. This vote should have been counted.

Appellant's Exhibit 90 has a voting mark in the Democratic circle. There is a check mark in the square before the appellant's name which renders it void as to him. § 29-5218, Rule 1, (d), *supra*. This ballot was properly excluded.

Appellant's Exhibit 123 is a mixed ballot. In the square before appellant's name there is a cross and also what appears to be a check mark intentionally made. This vote was properly excluded. § 29-5218, Rule 1, (d), *supra*.

Appellant's Exhibit 87 and 119 were each voted in the circle. The voting mark in each of these ballots resembles a figure "4" such as is made with a pen or pencil. In addition Exhibit 119 has a distinct horizontal mark in the circle made with a blue pencil which does not touch the cross. We consider this horizontal mark as a distinguishing mark. The vertical mark to the left in each of these voting marks which makes it appear as a figure "4" meets the horizontal branch of the cross and is no lighter than the other marks and does not appear to have been accidently made. These ballots were properly excluded. *Lewis* v. *State* (1915), 184 Ind. 99, 109 N. E. 777; *Craney* v. *Traylor, supra,* p. 550.

On the back of appellant's Exhibit 100 is written in ink the following words: "Mutilated, voted, Voted one

too many." All of these words appear to be in the same handwriting. In the lower lefthand corner appear the poll clerk's initials. The appellee contends that we must presume that these initials were placed on the ballot at the same time that the above written words were placed thereon. We note that the poll clerks' initials are in the proper place on the back of the ballot and they do not come under the above set out written words. We must presume that the poll clerks followed the law as to the time they should initial said ballot. The above mentioned writing did not invalidate the ballot. *Conley* v. *Hile, supra,* p. 504. This ballot should have been counted.

The ballot identified as appellant's Exhibit 103 has the cross in the circle. This cross was made in ink which renders this particular ballot invalid. § 29-5021, Burns' 1933, (Supp.).

Appellant's Exhibit 107 was voted in the circle. The voting mark is a cross which has an additional line through it. From the location of this additional line it is apparent that it was not due to a defective pencil. It is separate and distinct. It is our opinion that the same must have been made intentionally. This ballot was properly rejected.

Appellant's Exhibit 109 was properly rejected. This ballot was voted in the Democratic circle. There are crosses in two of the squares in the Democratic column one of which was Dobbyn's square. There are also heavy blue pencil marks through the cross in the Dobbyn square. These pencil marks are very distinct and there are a great many of them and amount to marks other than a cross mark. § 29-5218, Rule 1, (d), *supra.*

Appellant's Exhibit 116 was properly excluded. This exhibit purports to be a mixed ballot. On the face of

the same there are at least fourteen different crosses made with a blue pencil. All of these crosses are outside the party square and each is a distinguishing mark and voids the entire ballot. § 29-5218, Burns' 1933, (Supp.), Rules 7 and 8.

On the face of appellant's Exhibit 121 is a double line in ink approximately one-half inch in length. On the face of appellant's Exhibit 124 is a cross near the lower lefthand corner of the ballot. This cross appears to have been made in ink. Both of these marks are outside and do not touch any voting square or circle. Each of them have been deliberately made. We hold that each of these marks is a distinguishing mark and that these ballots were properly excluded.

Appellant's Exhibit 125 was excluded. This ballot has the lower righthand portion of the same entirely torn away. The poll clerks' initials do not appear on this ballot. The portion missing is approximately three inches long and two inches wide. We have examined the evidence that was considered in explanation of this ballot and cannot say that from this evidence we are compelled to draw an inference contrary to that arrived at by the trial court. This ballot will not be counted.

We will next consider the ballots whose admission or exclusion have been challenged by the appellee's cross-errors.

Appellant's Exhibit 3 which was counted has the voting mark in the circle. This cross is irregular and consists of multiple lines of more than two. In our opinion, however, these extra lines could be due to the use of a broken or split pencil. What was heretofore said in this opinion as to appellee's

Exhibits 1 and 54 applies to the ballot now under consideration. This ballot was properly counted.

Appellant's Exhibit 27 was a mixed ballot. In appellant's square the mark is small and resembles a "V" and the lines do not cross. What was said in this opinion as to appellee's Exhibit 2 applies to the ballot now being considered. This ballot should not have been counted.

Appellant's Exhibit 32 is a mixed ballot. Although the mark in the appellant's square at first glance resembles a "V" we are of the opinion that the lines do cross and that this ballot was properly counted.

Appellant's Exhibit 12 is an absentee ballot with the mark in the Democratic circle. The mark is made in ink and consists of an "X." There is an additional line running from the point of intersection of the cross lines. This line is a clear cut steady line and must have been intentionally made as it is very apparent that the same is not a retracing and could not have been caused by accident, mistake, or bad eyesight. In our opinion this mark constitutes a distinguishing mark and the ballot should not have been counted.

It is insisted that the initials of one of the poll clerks on appellant's Exhibit 6 is made with a blue pencil. Our statute provides that these initials shall be made in ink. § 29-5012, Burns' 1933, (Supp.). We are not inclined to disturb the trial court's finding on this matter. We hold, therefore, that this ballot was correctly counted.

Appellant's Exhibits 15 and 84 are ballots which are marked in the circle. Appellant's Exhibit 47 is a mixed ballot. The voting marks in Exhibits 15 and 84 and in the appellant's square on Exhibit 47 each resemble a hurriedly made figure "4." What we have said in

regard to appellee's Exhibits 10 and 45, and appellant's Exhibits 87 and 119 applies to these exhibits. The vertical mark at the left is a distinguishing mark and these ballots should have been excluded. *Craney* v. *Traylor, supra,* p. 550; *Lewis* v. *State, supra.*

Appellant's Exhibit 16 is a mixed ballot. All of the marks in the square including that of appellant are regular except in the square before the name of Leonard O. Shaw. This does not invalidate this ballot as to appellant. This ballot was correctly counted. § 29-5218, Rule 1, (d), *supra.*.

Appellant's Exhibit 18 was voted in the Democratic circle. The voting mark is a figure "4." What was said in regard to appellant's Exhibits 87 and 119 applies to this ballot. It was error to count the same. *Lewis* v. *State, supra,* p. 101.

Appellant's Exhibit 17 is a straight Democratic ballot. The voting mark in the circle consists of a large cross with prongs on each arm. In addition there is a line running from one of the lower arms up to and connecting one of. the other arms which can be explained as a retrace. The prongs can be explained as due to unskillfulness, physical infirmity, or conditions not conducive to accuracy. *Conley* v. *Hile, supra.* This ballot was properly counted.

Appellant's Exhibit 20 was properly admitted in evidence. This exhibit has the voting mark in the Democratic circle. This mark shows a good faith effort of the voter to comply with the statute as it is merely an irregular cross. § 29-5218, Rule 1, (d), *supra.*

In the lower right-hand corner on the back of appellant's Exhibit 21 appears in blue pencil the letter "N" or "M." This is a distinguishing mark. The ballot is invalid and should not have been counted. *Conley* v. *Hile, supra,* p. 505.

Appellant's Exhibit 22 is a mixed ballot and contains a very slight hole in the Democratic circle. This is too trivial to amount to a mutilation. There is no indication that the same was caused by an erasure. This ballot was properly counted.

Appellant's Exhibit 25 is a mixed ballot. There is a slight smudge in the voting square before the name of Louis Gibson which does not invalidate this ballot. On the face of the ballot, however, near the bottom thereof, there is a figure marked in ink similar in appearance to the letter "W." This mark is not in a voting square and the ink used in making the same is not the same color as the ink used in the poll clerks' initials. This mark is a distinguishing mark and this ballot should not have been counted.

Appellant's Exhibits 53, 54, and 108 are ballots which are torn. Ballots 54 and 108 have parts of the ballots missing. The parts missing, however, are from the blank portions of these ballots. Each of these ballots was properly counted as there is no indication that these ballots were torn or defaced by the voter. Exhibit 53 was an absentee war ballot. It is mentioned that the poll clerks' initials were not on this ballot. An absent voter's ballot is valid without such initials. *Wright* v. *Walker* (1926), 197 Ind. 561, 567, 151 N. E. 424.

On the back of appellant's Exhibit 55 appear some fine blue pencil marks drawn back and forth looking somewhat like an elongated "W." This ballot was properly counted for the same reason that appellee's Exhibit 94 was counted.

Appellant's Exhibit 40 is a mixed ballot. The mark within the Fred Dobbyn square is regular. All other marks are within the different squares, some of which,

however, are not regular. Under § 29-5218, Rule 1, (d), *supra,* this ballot was properly counted for appellant.

Appellant's Exhibits 76 and 83 are mixed ballots. Appellant's Exhibit 77 is voted in the Democratic circle. The defects complained of in ballots 76 and 83 are an extra line from one arm of the cross in the Democratic square. The defect complained of in Exhibit 77 is the same. These extra marks are faint in each instance and could have been made by accidentally scraping the pencil. It is also insisted that the poll clerks' initials on Exhibit 76 were made in blue pencil. We will not disturb the trial court's finding on this objection. These ballots were properly counted for the same reason that appellee's Exhibit 1 heretofore described was properly counted.

Appellant's Exhibit 13 is marked in the circle. This mark is in the form of a square with each line protruding from the corners of the square and is made with four separate distinct lines. Clearly this is a distinguishing mark and this ballot should not have been counted.

Appellant's Exhibits 42, 49, and 52 are each marked in the circle. Each of these voting marks is a cross. Each is irregular but appears to have been made by a split pencil and reflects an honest effort on the part of the voter. These exhibits were properly counted.

Appellant's Exhibits 62, 98, and 132 are mixed ballots.. On each of these ballots the voter has made a smudge with a blue pencil in a square other than that of appellant. These smudges cannot be described as marks or erasures. None of them could have been caused by accident. One of them covers the entire square and is very carefully done. Each of the others is quite dense and covers the greater portion of the square. These ballots are subject to the same defect

as appellee's Exhibit 40. Each of these ballots is fatally mutilated and defaced and should not have been counted. *Conley* v. *Hile, supra,* pp. 507-508.

Appellant's Exhibit 86 is a mixed ballot. There is what appears to be a blue mark in one of the squares other than that of appellant. This mark might well have been held by the trial court to be a smudge as the mark is very indefinite. We are not inclined to disturb the Court's finding and hold that this ballot was properly admitted.

Appellant's Exhibit 85 is a straight Democratic ballot. There is an extra mark in the Democratic circle. This mark is about one-fourth inch long near one of the lower arms of the cross. It is very faint and in our opinion was not made intentionally. This ballot was properly counted.

Appellant's Exhibit 95 is a mixed ballot. In a square other than that of appellant there are marks which constitute an incomplete cross. This does not invalidate the ballot as to appellant, therefore, it was proper to count the same.

Appellant's Exhibit 101 is a mixed ballot. In the square before the name of appellant there is a cross. Connecting two arms of this cross is a firm blue line. There is also an extra line drawn through the center of this cross. This ballot should not have been counted for the reasons we have heretofore set out in discussing appellant's Exhibits 15 and 84.

Appellant's Exhibit 61 is voted in the Democratic circle. The voting mark is substantially the same as that in appellee's Exhibit 17. It was proper to count this ballot for the same reason that appellee's Exhibit 17 was counted.

Appellant's Exhibits 19 and 133 are each straight Democratic ballots. We have examined these ballots

and find that each of the same are regular. We see no evidence of the objections claimed as to each of them. These ballots were each properly admitted.

Appellant's Exhibit 48 was voted in the circle. Near one of the arms of the cross is a parallel mark less than one-fourth inch long. We attribute this mark to accident. It may have resulted from the use of a split pencil. This vote was properly counted.

Appellant's Exhibit 50 shows that one arm of the cross extending from the upper right to the lower left has been retraced. This ballot was properly counted.

Appellee's Exhibits 5, 16, 20, 101, and 117 are each similar to appellant's Exhibit 1 heretofore discussed in this opinion. On the back of Exhibit 117 there appears in ink the words "not counted." Under these words are the initials of the poll clerks. The poll clerks' initials also appear in the regular place on the ballot. It is obvious that this notation and initialing was done by the poll clerks and is not chargeable to the voter. Each of these ballots should have counted for the reasons given for counting appellant's Exhibit 1.

On appellee's Exhibit 66 there is a cross in the Prohibition circle. Only one candidate appears in the Prohibition column, that being for Representative in Congress. Also, there are crosses on this ballot in all the Republican squares except the one opposite the Prohibition candidate, and, Austin L. Meyers, candidate for county surveyor. In our opinion this ballot should have been counted for the same reason that appellant's Exhibit 1 was counted.

Appellee's Exhibit 9 is a ballot with a cross in the Republican circle and crosses in the squares in the Republican and Democratic columns. This vote should

have been counted under said § 29-5218, Rule 6, *supra*.

On appellee's Exhibit 24 there is a long vertical torn place. We are not inclined to disturb the finding of the trial court that this ballot was mutilated. This ballot will not be counted.

On appellee's Exhibits 36, 107, 111, and 114 there is a cross in the Republican circle and also in the Prohibition circle. There is only one candidate in the Prohibition column. The statute does not authorize the making of a voting mark in more than one party circle. It is our opinion that these marks are distinguishing marks and it was proper to reject these ballots.

Appellee's Exhibits 43, 47, 56, and 109 are each voted in the Republican circle. In each of these crosses there are more than two lines. These extra lines in each instance have been placed with a firm hand and must have been intentionally made. None of them could have been caused by retracing, split pencil, accident, bad eyesight or other infirmity, mistake, indecision or a cramped position. These ballots were properly rejected.

Appellee's Exhibit 93 is a straight Republican ballot. This ballot was rejected on the grounds that the cross in the circle was made in ink. We will not disturb the finding of the trial court as to this ballot.

Appellee's Exhibit 82 is voted in the Republican circle. In addition to the cross there is a straight mark approximately one-fourth inch long at right angles with one of the arms of the cross. This mark is distinct and of about the same density as the marks in the cross. Evidently it was intentionally made. This ballot was properly rejected.

Appellee's Exhibit 98 is a mixed ballot and is subject to the same infirmity as appellant's Exhibits 62, 98,

and 132 heretofore discussed. This ballot was properly rejected.

. Appellee's Exhibit 95 is voted in the Republican circle. The voting mark shows indications of having been erased. We will not disturb the trial court's finding as to this ballot. We therefore reject the same.

. Of the ballots brought in question by the motion for a new trial we find that eight should not have been counted for the appellee which were counted, and 12 should have been counted for the appellant which were not counted.

Of the ballots challenged by the appellee's cross-errors we find that 13 should not have been counted for the appellant which were so counted and seven should have been counted for the appellee which were not counted. We find therefore that there were 8,101 valid ballots cast for the appellee and 8,093 valid ballots cast for the appellant. Appellee received eight more valid ballots than the appellant and was elected.

Judgment Affirmed as of April 30, 1947.

Gilkison, J., not participating.

NOTE.—Reported in 76 N. E. (2d) 570.